## STATE v. HYMAN J. FRIEDMAN.[1]

February 3, 1950.

No. 34,972.

*Lindahl O. Johnson,* for appellant.

*John F. Bonner,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

[1]Reported in 40 N. W. (2d) 912.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from a judgment of the municipal court of Minneapolis. finding defendant guilty of violating ordinance 1:3, § 19, of the city of Minneapolis, commonly designated the "plumbing" ordinance, which reads as follows:

"All parts of the drain, waste and vent systems of all plumbing shall be left uncovered until after the same shall have been tested by the Plumbing Inspector and found to be perfectly tight and installed in accordance with the provisions of this ordinance.

"Any person having charge of the construction, alteration or repair of any building, or any other person, who covers or conceals, or causes to be so covered or concealed, any of the drain, waste or vent system of plumbing for which a permit has been issued or is required, before the said drain, waste or vent system shall have been inspected and approved by the Plumbing Inspector, shall be subject, upon conviction thereof, to the penalty herein provided for any violation of this ordinance.

"The entire plumbing and drainage system, when newly installed within any building, shall be tested by the plumber in the presence of the Plumbing Inspector under an air pressure of five (5) pounds to the square inch, and in all cases where only a part of the system is tested at one time, the plumber shall call for, and there shall be made, an additional test of the whole system. Where additional fixtures are to be added to, or alterations are to be made in, any system of old plumbing, the Plumbing Inspector may, if in his opinion it shall be deemed necessary, require the plumber to make a complete test of the whole system of plumbing as above required for new systems."

On appeal, the only issue presented is whether the evidence is sufficient to sustain the trial court's finding and judgment.

Defendant is the owner of certain premises in Minneapolis located at 1729-31 Eighth avenue north consisting of a duplex in the front and a garage or accessory building in the rear thereof. The garage, which was partially destroyed by fire some years ago prior to de-

fendant's acquisition thereof, is the property involved herein. Originally, living quarters on the second floor thereof had been planned, but it had never been equipped with plumbing or heating facilities or placed in use as originally intended.

Defendant acquired title to the premises on September 11, 1946. On November 25, 1947, having commenced improvements thereon without obtaining a building permit, he was arrested and charged with violating the building ordinance of Minneapolis. At that time he was found not guilty in the light of his testimony that the improvements did not then exceed in value the sum of $50, and hence were below the minimum for which a permit was required by the ordinance.

In the present action, defendant testified that in October 1947 he leased the garage to one Robert Warder, who was to make any repairs required for his occupancy and to obtain the necessary permits. The evidence disclosed that said Robert Warder was a contractor who had previously been employed by defendant in construction work and who actually occupied the premises for only four months, during which time he used only the first floor thereof for storage of his tools and equipment. In December 1947 the work here involved was commenced. Defendant admitted that he had purchased the bathroom fixtures which were thereafter to be installed on the second floor and had employed the plumber who installed them. It is undisputed that the work required a permit under the ordinance, and that no such permit was obtained by either defendant or Warder. The improvements were completed in August 1948, and the value thereof, when completed, was the sum of $800 approximately.

In September 1948, Walter Dunn, plumbing inspector for the city of Minneapolis, received information from other sources that the described improvements had taken place, and he attempted to inspect the premises. He had considerable difficulty in gaining admission, making several trips before he finally gained access thereto in December 1948.

He testified that his inspection established that the second floor of the garage had been equipped with complete kitchen and bathroom facilities; that the water and sewer pipes therefor had been connected with the city water and sewer below the garage building and then brought up through the first floor and through the ceiling into the second floor; and that on the second floor such pipes were concealed by the lathe and plaster wall so as to be hidden from view. The evidence indicated that all such improvements had been made surreptitiously and, for the most part, behind closed doors.

■ We are of the opinion that the evidence as outlined is sufficient to sustain the trial court's conviction and the judgment entered pursuant thereto. The ordinance involved, 1:3, § 19, specifically provides:

"All parts of the drain, waste and vent systems of all plumbing *shall be left uncovered* until after the same shall have been tested by the Plumbing Inspector," and

"*Any person having charge of the construction, alteration or repair of any building, or any other person, who covers or conceals, or causes to be so covered or concealed, any of the drain, waste or vent system of plumbing for which a permit has been issued or is required, before the said drain, waste or vent system shall have been inspected and approved by the Plumbing Inspector, shall be subject, upon conviction thereof, to the penalty herein provided for any violation of this ordinance.*" (Italics supplied.)

Defendant admitted that he was the owner of the premises; that he had purchased the material and employed the labor used in making the improvements; and that Warder, his alleged tenant, had been in his employ in connection with construction work at various times. The trial court was justly skeptical of defendant's claim that Warder was doing the work on his own initiative and for his own benefit in view of his short occupancy of the premises for storage space only and the substantial costs involved. In any event, the ordinance is not limited in its application to the workman actually performing work or furnishing material, but extends

to "Any person having charge of the construction, alteration or repair." State v. Beery, 198 Minn. 550, 270 N. W. 600.

Defendant asserts that, because the pipes inside the second-floor partitions and walls might be viewed by climbing to the ceiling of the room and looking down between such partitions, no violation of the ordinance was established. It is clear that the purpose of the ordinance is to allow testing of the pipes by proper inspectors to ascertain whether they are properly installed and sealed. Obviously, a possible view thereof from the angle described would not constitute compliance with the provisions of the ordinance as above quoted.

■ It is asserted that the trial court erred in admitting the testimony of Walter Dunn as to conversations with Abraham Friedman, father of defendant. Such conversations related to Dunn's repeated efforts to gain admission to the premises for inspection purposes and statements made to him at such times by Friedman, Sr., who was at the property, in substance giving various reasons why such access could not be permitted. They were to the effect that Friedman, Sr., was the owner of the premises and intended to remove the plumbing and convert the garage into office space; that he had sold the property to one Anderson in Hopkins, who would not permit access; that his son, defendant, did not own the property or have anything to do with the improvements made; and other like statements, all designed to prevent inspection of the property by Dunn.

The reception of such testimony, if erroneous, was in the nature of harmless error. The admissions of defendant while on the witness stand as to ownership of the property, as to purchase of the materials, as to employment of the labor, and other like matters were sufficient to sustain his conviction of violation of the ordinance. The close coöperation between Friedman, Sr., and defendant might well sustain a finding that, on the occasions described, the former was actually acting as agent for his son and that hence his statements with reference to the property were admissible. In any event, in the light of the other undisputed evidence, which amply sustains

the trial court's conviction, we find no reversible error in the admission of the testimony as to these conversations. Swanson v. Lindstrom, 151 Minn. 19, 185 N. W. 950.

Affirmed.